# EXHIBIT A

to Defendants' Notice of Removal

*Class Action Complaint for Damages*

Motaz M. Gerges, SBN 202175
LAW OFFICE OF MOTAZ M. GERGES
18543 Devonshire St., #448
Northridge, CA 91324
mgerges@aol.com

14320 Ventura Blvd. #463
Sherman Oaks CA 91423
Telephone: (818) 900-5600
gergeslaw@yahoo.com

Attorneys for Plaintiffs,
Hany Tanious; Loussine S. Mazmanian
and the Class Members

**FILED BY FAX**
ALAMEDA COUNTY

October 09, 2020

CLERK OF
THE SUPERIOR COURT
By Lynn Wiley, Deputy

CASE NUMBER:

**RG20076517**

**FILED BY FAX**

SUPERIOR COURT OF STATE OF CALIFORNIA
COUNTY OF ALAMEDA

| | |
|---|---|
| Hany Tanious; Loussine S. Mazmanian; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>James B. Gatton; Patrick J. O'Malley; Landstar System Inc.; Landstar Ranger, Inc.; and DOES 1 to 25, inclusive,<br><br>Defendants. | Case No.:<br><br>**Class Action Complaint for Damages**<br><br>1. Willful Misclassification, California Labor Code § 226.8;<br>2. Waiting Time Penalties, California Labor Code §§ 201-203;<br>3. Statutory Penalties Pursuant to PAGA, California Labor Code § 2699(a);<br>4. Statutory Penalties Pursuant to PAGA, Labor Code § 2699(f);<br>5. Violations of California's Workers Compensation Act, California Labor Code § 3200;<br>6. Retaliatory Termination, Labor Code §132a;<br>7. Constructive Fraud and Negligent Misrepresentation;<br>8. Unjust Enrichment;<br>9. Negligent;<br>10. Negligent Per Se;<br>11. Loss of Consortium;<br>12. Intentional Infliction of Emotional Distress;<br>13. Unlawful Business Practices, California Business and Professions Code § 17200.<br><br>**JURY TRIAL DEMANDED** |

1

Class Action Complaint

Plaintiff Hany Tanious, ("Mr. Tanius") and his wife Plaintiff Loussine S. Mazmanian, ("Mrs. Mazmanian"), (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, hereby bring this class action complaint against Landstar System, Inc., ("LSI"), a Delaware Corporation; Landstar Ranger, Inc., ("LRI"), a Delaware Corporation; Mr. James B. Gatton, (Mr. Gatton") CEO of LSI and Mr. Patrick J. O'Malley, (Mr. "O'Malley") CEO of LRI; and DOES 1 to 25, inclusive (collectively "Defendants"), and on information and belief allege as follows:

## I.    INTRODUCTION

1.    This case involves defendans/employers' deliberate scheme to misclassify their truck drivers as Independent Contractors, ("IC"), thereby denying them the fundamental protections due to employees under California law. This class action seeks to enjoin the defendants' unlawful conduct, to obtain restitution for unlawful business practices and to prosecute a private enforcement action to collect civil penalties under the Labor Code Private Attorney General Act ("PAGA"), against Defendants LSI, LRI, Gatton and O'Malley, inclusive (hereafter, collectively referred to as "Defendants"), under the California Labor Code, the California Industrial Welfare Commission's ("IWC") Wage Orders, the California Business and Professions Code (§§ 17200 et seq.), and other statutes and regulations applicable to non-exempt employees in the State of California.

2.    Plaintiff and his wife Mrs. Mazamanian also bring this action against defendants and each of them for Mr. Tanius' personal injury damages including emotional distress while driving his truck and for his wife's Loss of Consortium and her Emotional Distress for damages her husband suffered due to his injuries.

3.    This combined class and PAGA enforcement action is brought against Defendants who is the third biggest trucking company with operations in Southern California and across United States for engaging in a pattern and practice of willfully misclassifying their truck drivers, including Plaintiff as IC instead of affording them their true status as W-2 Employees, thus denying these workers the basic wage protection rights guaranteed to employees by the California Labor Code and the IWC's applicable Wage Order.

2

Class Action Complaint

1       4.     The result of Defendants' misclassification scheme is that Plaintiff and other

2 similarly situated truck drivers were, and are, routinely denied payment of all earned wages,

3 including benefits under worker's compensation, sick days, holiday pays and other similar rights

4 and protections for Defendants' own business operational expenses and bottom-line profits.

5 Instead, Defendants have taken such wages owed to Plaintiff and other similarly situated truck

6 drivers and unlawfully converted the funds for Defendants' own use and benefit, in order to

7 maximize profits and gain an unfair business advantage over their competitors at the expense of

8 Defendants' own employees. By their unlawful misclassification scheme, Defendants also evaded

9 their obligation to provide Workers' Compensation protection to these employees in an industry

10 where work-related injuries and illnesses are far from uncommon.

11       5.     Defendants' acts and omissions, as described herein, violate provisions of the

12 California Labor Codes; violate the applicable Wage Orders issued by the California Industrial

13 Welfare Commission, including Wage Order 9-2001; Worker's Compensation Act, ("WCA"), and

14 amount to unfair and unlawful business practices prohibited by the California Business and

15 Professions Code, sections 17200 et seq.

16       6.     Plaintiffs now bring this class action, on behalf of themselves and a class of

17 similarly situated former and current truck drivers who drive trucks they own but over whom

18 Defendants nonetheless retain and exercise a level of control such that they are properly deemed

19 Employees under California law (hereafter collectively referred to as "Drivers"), to recover the

20 damages owed to Drivers by Defendants, to recover the benefits unlawfully stolen from Drivers by

21 Defendants, and to collect all applicable statutory penalties for Defendants' myriad violations of

22 the California Labor Codes, including worker's compensation benefits, personal injury

23 compensation, Loss of Consortium and Intentional Infliction of Emotional Distress caused to the

24 family of the Plaintiffs and class members due to Defendants deliberate illegal business activities.

25       7.     Also, pursuant to the California Labor Code Private Attorney General Act of 2004

26 (Cal. Lab. Code §§ 2698 et seq.), Plaintiffs seek to assess and collect on behalf of the California

27 Labor and Workforce Development Agency and each aggrieved Driver the applicable civil

28

1   penalties for Defendants' Labor Code violations committed against Plaintiffs, and other former

2   and current Drivers who were willfully misclassified by Defendants as independent contractors.

3                            II.   **NATURE OF ACTION**

4          8.      This is a California class action lawsuit consists of Class and Sub-Class Members

5   against Defendants LSI, LRI, Gatton and O'Malley to challenge, among other things, their policy

6   and practice of unlawfully misclassifying their non-exempt hourly Driver employees ("Drivers")

7   as IC who are exempt from the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et

8   seq. ("FLSA") and California wage and hour laws, unemployment benefits, paid vacations, sick

9   and personal days, worker's compensation benefits and others.

10         9.      As a result of their unlawful misclassification policy and practice, Defendants have

11  (1) failed to provide proper wage compensation and engaged in unfair business practices pursuant

12  to California Business and Professions Code §§ 17200, et seq.; (2) failed to provide worker's

13  compensation benefits in violation of California's Workers Compensation Act, Labor Code §

14  3200; and (3) for wrongful termination and retaliation for injuries Plaintiff suffered while at work.

15  Plaintiff Drivers request statutory damages for violating the various California Labor Code

16  provisions enumerated above.

17         10.     Plaintiff and the members of the proposed Class and Sub-Classes are current and

18  former Drivers employed by Defendants. Drivers working for Defendants LSI, LRI, Gatton and

19  O'Malley are responsible for safely operating a commercial vehicle and transporting customer

20  cargo to their destination in a timely manner.

21         11.     Despite classifying Drivers as "Independent Contractors," Defendants treat

22  Plaintiff and Drivers as Employees. Defendant effectively bar Drivers from engaging in business

23  with anyone other than Defendants, thereby making Drivers financially dependent on Defendants.

24         12.     Additionally, Defendants exercise significant control over, among other things, the

25  way that Drivers performed their job duties, the tools and equipment Drivers are required to use to

26  perform their job duties, where and when they travel and what locations they travel to in order to

27  pick up or drop off loads, Drivers' rate of pay, and Drivers' ability to work for any other

28  businesses. Defendants fix the compensation paid to Drivers. Finally, Drivers perform duties

                                           4

1    consistent with Defendants' central business. Drivers make deliveries on behalf of Defendants

2    and many Drivers work full-time for Defendants for many years.

3       13.     Plaintiff, putative Class and Sub-Class members regularly work between eight and

4    fourteen hours per day and sometimes more. Despite their status as misclassified independent

5    drivers, defendants routinely assign and direct how many hours Drivers can commute in a day,

6    when to take lunch, break and rest, if any and even where to take their vehicles for repairs.

7       14.     In order to avoid paying Drivers all their statutory benefits, pay rates, lunch and

8    break times, out of pocket expenses, truck lease payments, gasoline and other benefits,

9    Defendants deliberately and frivolously misclassify Drivers while purposefully do not maintain

10   proper records showing all hours worked by Drivers.

11      15.     More importantly, in an effort to avoid paying Drivers their full benefits in the

12   event Drivers are injured while under control of Defendants, Drivers are frivolously and

13   deliberately misclassified as Independent Drivers instead of W-2 employees, causing Drivers to

14   lose substantial benefits under the California Worker's Compensation Act.

15      16.     Because of these violations, Plaintiff Drivers and their families are entitled to seek

16   compensation, damages, penalties, and interest to the full extent permitted by California Labor

17   Code, and Industrial Welfare Commission ("IWC") Wage Order 9-2001 and Labor Code § 3200,

18   all economic and noneconomic damages due to injuries Plaintiff suffered while employed by

19   defendants.

20      17.     Defendants LSI, LRI, Messr. Gatton and O'Malley are also liable for various other

21   penalties under the Labor Code, and for violation the Unfair Competition Law, California

22   Business and Professions Code §§17200, et seq. ("UCL").

23      18.     Plaintiff and his wife seek full compensation on behalf of themselves and all others

24   similarly situated for the same benefits as authorized under California labor codes had Drivers

25   been properly and lawfully classified as W-2 Employees; all benefits and compensations under

26   California WCA and appropriate penalties under the Labor Code Private Attorneys General Act

27   of 2004 ("PAGA").

28

Class Action Complaint

19.     Plaintiff, on behalf of himself and all others similarly situated also seeks relief for Defendants Gatton and O'Malley's misrepresentations and omissions of material fact regarding misclassification of Drivers as IC rather than W-2 Employees, lost benefits under labor codes and WCA, the income Drivers would earn, the miles they would drive, and the nature of the economic opportunity Defendants were offering to them. Such claims are made under applicable California statutes and common law.

20.     Plaintiff on behalf of himself and all others similarly situated also seeks declaratory, equitable, and injunctive relief, including restitution and disgorgement of profits.

21.     Finally, Plaintiff and class members seek reasonable attorneys' fees and costs under the FLSA, WCA, the California Labor Code, Business & Professional Code § 17500 and California Code of Civil Procedure § 1021.5.

## III.   JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action pursuant to Business and Professions Code §§ 17200; 17500; and California Labor Code § 132a; §§ 201-203; § 226.8; § 2699(a), § 3200;

23.     This Court has proper jurisdiction over this action pursuant to § 410.10 of the California Code of Civil Procedure. The violations of law complained of herein occurred in this county or few of defendants reside and conduct business in this district. Furthermore, the amounts in controversy exceed the jurisdictional minimum of this Court.

24.     Venue is proper in the Superior Court of the County of Alameda pursuant to California Code of Civil Procedure §§ 395 and 395.5.

## IV.   AGREEMENTS WITH CLASS MEMBERS; AMOUNT IN CONTROVERSY; DEADLINE FOR PURPOSES OF REMOVAL AND DEFAULT AMOUNT

### A.   AGREEMENTS WITH CLASS MEMBERS

25.     Plaintiffs and their present counsel have not entered into any agreement with any class members to represent such member in this action. Each class member has the authority and freedom to opt-out of this action, retain their own private attorney, file separate suit and seek their own individual damages and compensations.

**B. AMOUNT IN CONTROVERSY**

26.    For the purpose of removal under Class Action Fairness Act of 2005, the aggregate amount in controversy for Class members DOES NOT exceed $5,000,000 which includes all attorneys' fees, interests, costs, statutory and punitive damages, economic and noneconomic damages where the class comprises at least 100 plaintiffs and where there is at least "minimal diversity" between the parties; nor does the individual amount in controversary exceeds $75,000 which includes all attorneys' fees, interests, costs, statutory and punitive damages, economic and noneconomic damages for individual purposes as required in accordance with 28 U.S.C. Sections 1332(d) and 1453.

**C. DEADLINE FOR PURPOSES OF REMOVAL**

27.    Further, for the purpose of removal under Class Action Fairness Act of 2005, Diversity Jurisdiction, the deadline to remove to federal court shall begin 30-days from first "serving the first defendant with a copy of the State Court Summons and Complaint" or 30-days from subsequent "serving the last defendant with a copy of the State Summons and Complaint" or any initial subsequent paper or pleading that is filed by either party or the Court. No other deadline shall be entertained. (28 U.S.C. § 1446(b)(1)).

**D. DEFAULT AMOUNT**

28.    For the purpose of seeking entry of default against any defendant served with a copy of State Summons and Complaint who fails to timely file a responsive pleading within statutory deadline shall be in the amount of $75,000 for individual action and $5,000,000 for class action complaint which include all attorneys' fees, interests, costs, statutory and punitive damages, economic and noneconomic damages.

**V.    PARTIES**

29.    Plaintiffs are a resident of State of California. Plaintiff Tanius was employed as a Driver for Defendants approximately for five & half years until October 29, 2018, when he was terminated by Defendants due to the lifelong injuries he suffered while working as a truck driver and in full control of Defendants LSI, LRI, Messr. Gatton and O'Malley.

30.    At all relevant times, Defendants LSI and LRI were and still are domiciled in State of Delaware and through the decision and policy makers Codefendants Gatton and O'Malley who are California residents, deliberately, intentionally, calculatedly and for their own personal benefits misclassified Plaintiff and the Class members as exempt independent contractors when they were in fact Non-Exempt W-2 Employees. Specifically, Plaintiff and class members would regularly engage in Defendants' business in various locations from California State to 48 other States in the United States.

## VI.  GENERAL ALLEGATIONS

31.    Plaintiff has been a victim of Defendants' policies and/or practices complained of herein, lost money and/or property, and has been deprived of the rights guaranteed by Labor Code §§ 132a; §§ 201-203; § 226.8; § 2699(a), § 3200, California Business and Professions Code 17200, WCA, and Wage Order 9, which sets employment standards for the trucking industry and WCA, labor code section 3200.

32.    Plaintiff is informed and believes, and based thereon alleges, that during the six years preceding the filing this action and continuing to the present, Defendants did (and continue to do) business by providing transportation services and specializing in third-party logistics, and employed Plaintiff and other, similarly-situated  non-exempt employees within Alameda County and, therefore, were/are doing business in Alameda County and State of California.

33.    Plaintiff is informed, and believes, and thereon alleges, that at all times mentioned herein, Defendants were and are the employers of Plaintiff and all members of the Class. Plaintiff worked for Defendants as an "owner operator" from approximately January 2013 until approximately October 29, 2018. Unless otherwise specified, all allegations contained herein occurred during Plaintiffs employment with Defendants.

34.    Defendants are in the business of providing transportation services throughout California and the United States. To operate their business at the cost of the Drivers, Defendants willfully classify owner operators whom perform Defendants' core business functions as IC, opposed to W-2 Employees. Plaintiff and other similarly situated individuals should be classified as non-exempt employees of Defendants because they provide services that are within the usual

8

1   course of Defendants' business - transportation services. (Please See Dynamex Operations West.

2   Inc. v. The Superior Court of Los Angeles County (2018) 4 Cal.5th 903 ("Under this newly

3   enacted authority the [ABC] test, a worker is properly considered an independent contractor to

4   whom a wage order does not apply only if the hiring entity establishes: ... (A) **that the worker is**

5   **free from the control and direction of the hiring entity. . .")**

6          35.    Plaintiff was paid on a piece-rate basis, whereby he would get a flat piece-rate

7   amount for each haul he delivered. However, Plaintiff was not separately compensated for time

8   spent working on tasks which were not compensated on a piece-rate basis and was therefore not

9   paid at least the minimum wage for all hours worked. Some of these tasks included but were not

10  limited to, loading and preparing products for transportation, waiting for products to be delivered

11  to loading sites, and cleaning his trailer. Plaintiff worked shifts in excess of 3.5 hours and was not

12  authorized and permitted a paid rest period for every 4-hour period worked, or major fraction

13  thereof, because Defendants' piece-rate compensation plan failed to separately compensate

14  Plaintiff for required rest periods. (*See Bluford v. Safeway Inc.* (2013) 216 Cal. App. 4th 864;

15  Wage Order 9, § 12(A).). Defendants deliberately misclassify Plaintiff so they can walk away

16  from compensating Plaintiff in accordance with the rules established by California and Federal

17  Labor Codes.

18         36.    Plaintiff also worked shifts in excess of 8.0 hours per day and 40.0 hours per week,

19  however Defendants failed to pay Plaintiff the regular rate of pay when working overtime hours.

20  Instead, Plaintiff was only paid a flat piece-rate for all trips completed and was never compensated

21  for any overtime hours worked. Again, Defendants intentionally misclassify Plaintiff so they can

22  move away from compensating Plaintiff all overtime works in accordance with the rules

23  established by California and Federal Labor Codes.

24         37.    As a result of the misclassification scheme, Defendants maintained no policy or

25  practice for providing compliant meal periods to owner operators. Defendants failed to provide

26  Plaintiff with a legally-compliant meal period for each shift Plaintiff worked in excess of 5 hours,

27  and/or a second uninterrupted 30-minute meal period for each shift when Plaintiff worked in

28  excess of 10 hours. Defendants also failed to pay Plaintiff meal period premium payments as

1   required by Labor Code § 226.7, when Plaintiff experienced missed or non-compliant meal

2   periods.

3         38.    Upon information and belief during at least a portion of the relevant time period,

4   Defendants maintained no payroll code or other mechanism for the payment of meal period

5   premium payments under Labor Code § 226.7 in the event that a legally-compliant meal period

6   was not provided to non-exempt employees.

7         39.    Defendants required Plaintiff to use his personal cellphone and wireless internet

8   service plan for work-related calls and navigation without reimbursing him for these expenses as

9   required by Labor Code § 2802. Upon information and belief, Defendants failed to maintain any

10   policy for reimbursing employees for these work-related expenses.

11         40.    As a result of Defendants' failure to pay all minimum wages, overtime wages, and

12   meal and rest period premium wages, Defendants maintained inaccurate payroll records, issued

13   inaccurate wage statements to Plaintiff, and did not pay Plaintiff all wages owed at the time of his

14   retaliatory termination from employment with Defendants. Defendants also issued facially-

15   deficient wage statements that failed to adhere to Plaintiff's number of piece-rate units and rate per

16   piece on the wage statement.

17         41.    Plaintiff is informed, believes, and thereon alleges that Defendants use Drivers

18   relating to its delivery operation in California. Defendants operate in forty-eight states, with 10-

19   12% of its total nationwide miles logged in the State of California.

20         42.    Plaintiff is further informed, believes, and thereon alleges that Defendants

21   knowingly contract with California residents to perform their transportation business in the State

22   of California.  Defendants use their California-based drivers (such as Plaintiff) to pick up and drop

23   off loads from its California customers at locations in the State of California or to other states

24   nationwide. For every pick up and drop off, multiple transactions are consummated between

25   Defendants and its customers as well as Defendants and its truck drivers.

26         43.    Plaintiff is further informed, believes, and thereon alleges that Defendants

27   expressly instructs their California drivers to make pick-ups, drop-offs, and deliver freight in the

28

Class Action Complaint

1   State of California. Indeed, over 30% of Plaintiff's driving activity took place in the State of

2   California, pursuant to Defendants' express instructions.

3                          VII.    FACTUAL ALLEGATIONS

4          44.     At all relevant times, Defendants were Plaintiff's "employer" within the meaning

5   of the FLSA and California law.

6          45.     Throughout the time period beginning six years prior to the filing of this lawsuit,

7   through the present, Defendants have employed numerous Drivers and contracted with numerous

8   retail and wholesale clients around the country to provide transportation services.

9          46.     Defendants require prospective Drivers, including Plaintiff, to undergo a physical

10  examination and to submit to drug and alcohol testing. Drivers must agree to continue to submit to

11  drug and alcohol testing throughout their employment.

12         47.     Defendants require their Drivers, including Plaintiff, to sign lengthy form contracts

13  which mischaracterize each driver as an "Independent Contractor." The contracts are designed to

14  conceal the fact that Defendants and their Drivers are in an employer-employee relationship.

15  Defendants require Drivers, including Plaintiff, to sign these contracts of adhesion without

16  negotiation as a condition of employment.

17         48.     Although, Plaintiff and the Class members own their own vehicles, Drivers are

18  mandated to take their vehicle to designated mechanics for service or other repairs. If Drivers are

19  on the road delivering in other States, Drivers are compelled to take their truck to locations pick by

20  Defendants if the truck is in need of repair or service.

21         49.     Defendants then deduct vehicle damage charges, vehicle repair fees, administrative

22  charges and other equipment and materials charges from its Drivers', including Plaintiff's pay.

23         50.     In addition, Defendants require Drivers, including Plaintiff, to have insurance,

24  including, inter alia, occupational accident insurance, physical damage insurance, Bobtail

25  insurance, commercial liability insurance, and a performance bond. Defendants deduct the cost of

26  insurance from Drivers' compensation.

27         51.     Drivers, including Plaintiff, deliver goods on behalf of Defendants to their clients at

28  their direction and defendants collect the money directly from Defendants' customers.

52.     Drivers, including Plaintiff, receive work assignments from Defendants on wireless telecommunications device or over the phone. Drivers who decline routes from Defendants are punished by being sent to the bottom of the list of available Drivers, forcing them to wait longer before they are given another route.

53.     Routes provided by Defendants specify the point of origin, the destination, and the deadline for completion. Defendants prohibit Drivers, including Plaintiff, from traveling on any roads other than main, four-lane highways. Drivers who do not comply are reprimanded by Defendants and are denied assistance in the event of a mechanical failure.

54.     Drivers, including Plaintiff, for Defendants regularly drive long hours in order to get deliveries done on time. Drivers regularly drive between eight and fourteen hours in one day and in excess of fifty hours per week as dictated by Defendants.

55.     Drivers, including Plaintiff, are regularly denied timely meal breaks due to delivery deadlines imposed by Defendants. Drivers are often unable to take a lunch break, or alternatively take a "working lunch." Lunch breaks often occur after five hours of work. Drivers, including Plaintiff, working longer than 10 hours regularly did not have an opportunity to take a second lunch break.

56.     Additionally, Drivers, including Plaintiff, are regularly unable to take timely rest breaks due to delivery deadlines imposed by Defendants.  Drivers are often unable to take a rest break in the first four hours of work.  Drivers are also regularly unable to take a second rest break after six hours worked.

57.     Drivers, including Plaintiff are paid by miles driven. This rate is determined by Defendants. This rate is non-negotiable. Drivers also receive "unloading pay," set by Defendants.

58.     Wage statements provided by Defendants do not include the aggregate number of hours worked by Drivers, including Plaintiff. Instead, wage statements list only the number of hours driven while on route multiplied by the mileage rate, minus deductions. Defendants intentionally have set these rules and policies in place so they can have control over their Drivers; yet, they don't pay the Drivers compensations as Employees, rather as IC.

59.    Defendants exercise significant behavioral and financial control over Drivers, including Plaintiff, establishing that they are in fact employees. Specifically, this control includes the following: Drivers are required to purchase logos belonging to defendants LSI and LRI and mandate their Drivers to place them on their vehicles.

60.    Drivers are required to use wireless telecommunications products and services in order to accept work assignments from Defendants. Drivers are expected to complete deliveries in the time specified and determined by Defendants. Drivers are required to check in with Defendants' supervisors using their wireless telecommunications products and services at least two times per shift while on daily shift.

61.    Drivers also are not able to work for others; Drivers are required to comply with Defendants' policies, procedures and practices or suffer penalties for non-compliance. Drivers are mandated to prepare and submit required documentation in accordance with Defendants' policies and procedures. Drivers are required to purchase or lease equipment from Defendants. Drivers are also required to display signage with the name of Defendants LSI and/or LRI on their vehicles advertising and identifying they are vehicles belonging specifically to Defendants.

62.    Defendants instruct Drivers, including Plaintiff, where to buy fuel while on route. Defendants often directs Drivers to buy gasoline at specific gas stations, where the price is cheaper for Defendants but not for the Drivers. Defendants strongly prefer to pay for the fuel and recoup the cost from Drivers, rather than letting the drivers buy their own fuel.

63.    In addition, Defendants issues their Drivers, including Plaintiff, a "DOT Log Compliance Handbook," which describes the U.S. Department of Transportation's requirements for tracking and logging daily work activity. Defendants has the authority to terminate Drivers who do not properly log their times.

64.    Defendants have the authority to terminate Drivers, including Plaintiff, for failing to abide by Defendants' policies and practices.

65.    Defendants furnish their Drivers, including Plaintiff, with work equipment without charge. This includes trailers, snow chains, a safety triangle, and a spare set of tires.

Class Action Complaint

66.    However, Drivers, including Plaintiff, were required to pay for much of the other equipment necessary to complete their work. Drivers are responsible for the cost of maintenance for the vehicles and are required to seek approval before making any repairs to the leased vehicles. In the event a Driver damages or destroys any of Defendants' equipment, the replacement and/or repair cost is deducted by Defendants from the Driver's weekly pay.

67.    Drivers, including Plaintiff, are typically assigned deliveries from numerous Defendants' clients. Defendants do not allow Drivers to exchange assignments amongst themselves or to subcontract the delivery to another person or entity without approval from Defendants. By the terms of the lease agreement, Defendants also prohibit Drivers from using their own vehicles for personal uses or for other transportation companies.

68.    Defendants misrepresents to Drivers, including Plaintiff, that they will be and are treated as independent contractors instead of W-2 Employees.

69.    Defendants' unlawful conduct have been widespread, repeated, and consistent throughout their operations in California and the United States. Defendants knew or should have known that their policies and practices have been unlawful and unfair.

70.    Defendants' conducts are willful, carried out in bad faith, and caused significant damages to their employees in an amount to be determined at trial.

## VIII.    STATE SUPREME COURT ADOPTS "ABC TEST" FOR INDEPENDENT CONTRACTORS

71.    On April 30, 2018, the California Supreme Court issued its long-awaited opinion in *"Dynamex" Operations West, Inc. v. Superior Court*, clarifying the standard for determining whether workers in California should be classified as employees or as independent contractors for purposes of the wage orders adopted by California's Industrial Welfare Commission ("IWC"). In so doing, the Court held that there is a presumption that individuals are employees, and that an entity classifying an individual as an independent contractor bears the burden of establishing that such a classification is proper under the "ABC test" used in some other jurisdictions.

72.    Depending on the applicable statute or regulation, California has a number of different definitions for whether an individual is considered an entity's employee. In *Dynamex*, the

1  Court concluded that one of these definitions – "suffer or permit to work" – may be relied upon in

2  evaluating whether a worker is an employee for purposes of the obligations imposed by the wage

3  order. The Court held that it is the burden of the hiring entity to establish that a worker is an

4  independent contractor who was not intended to be included within the applicable wage order's

5  coverage.

6       73.     To meet this burden, the hiring entity must establish *each* of the following three

7  factors, commonly known as the "ABC test":

        A.  **that the worker is free from the control and direction of the hiring entity in**

8

9             **connection with the performance of the work, both under the contract for the**

10             **performance of the work and in fact;** *and*

11          B.  that the worker performs work that is outside the usual course of the hiring entity's

12             business; *and*

13          C.  that the worker is customarily engaged in an independently established trade,

14             occupation, or business of the same nature as the work performed.

15       74.     In reviewing State's highest Court decision, Drivers including Plaintiff have been

16  intentional misclassify as Independent Contractors in order to avoid paying them the benefits

17  Plaintiff and Drivers are entitled to receive as a W-2 Employees instead of IC.

18       75.     Looking at the "ABC Test" requirements, Defendants **must establish** the three

19  factors in "ABC Test" in order to consider Drivers and Plaintiff as IC. Defendants cannot pass

20  beyond the "A" factor because Defendants exercise full control over their Drivers including

21  Plaintiff as described in paragraphs 31 to 70 above.

22       76.     In misleading and coercing their Drivers including Plaintiff and as part of

23  Defendants' employment process, Defendants mandate the Drivers and Plaintiff to sign an

24  Adhesion Independent Contractor Agreement to bind them as such. To coerce Drivers and

25  Plaintiff to submit to a one-sided agreement without bargaining power is not one of the "ABC"

26  requirements set by the High Court to pass muster as Independent Contractors.

27       77.     An adhesion contract is a "boilerplate contract" that is drafted by Defendants with

28  stronger bargaining power who mandate their Drivers to sign it as weaker bargaining power in

1    order to get a job as truck drivers. Adhesion contracts are one sided agreement that demand

2    Drivers including Plaintiff to "take it or leave it" by signing here, there, everywhere, as

3    Defendants take full control over Drivers not consistent with the "A" factor in the "ABC" Test.

4    ## IX.  FACTS IN SUPPORT OF PLAINTIFF'S PERSONAL INJURY CLAIMS

5          78.    This is also an action for personal injury arising from Plaintiff's accident while

6    driving for Defendants on or about October 18, 2018.

7          79.    On October 18, 2018, around 10 am, while hauling a load for Defendants,

8    Plaintiff's truck jackknifed on interstate I-44 going west on mile marker 1 in Joplin Missouri. At

9    the time of the incident, Plaintiff was assigned by Defendants to Haul a load using Landstar trailer

10   that was routed to California for delivery.

11         80.    As Plaintiff was passing the scale point, about a mile before the truck jackknifed,

12   Plaintiff reduced the speed from 55 miles to 15 miles per hour.

13         81.    After passing the scale, Plaintiff started building up speed and when truck reached

14   to 35 miles per hour the road reached about 3-degrees downhill which caused flooding at the

15   bottom of the hill, due to thunder storms.

16         82.    Due to storm which caused massive rain and gusty wind in excess of 45-50 miles

17   per hour blowing from the North of the Road.

18         83.    Due to such strong gusty wind, Plaintiff found the tail of the trailer attached to the

19   truck crossed the left lane while Plaintiff was driving on the right lane. At this stage, the tail of the

20   trailer kept on swinging wide at 360-degree angle, which caused the trailer to jackknife and caused

21   tossing the truck and the trailer to the right shoulder facing the opposite direction, East on I-44.

22         84.    Several seconds after the truck and trailer rested on the shoulder of the interstate

23   44, Plaintiff immediately contacted 911 to report the accident and his whereabout. The 911

24   operator asked Plaintiff if he was injured? Plaintiff informed the operator that he could not move;

25   and he was also suffering from severe pain in his back and legs.

26         85.    The operator further asked if anyone else was involved in the incident which was

27   responded in negative. The operator advised Plaintiff that the police and the ambulance were on

28   their way to assist him.

86.     After the 911 call was terminated, Plaintiff immediately called Landstar Safety Department, ("LSD") to report the incident. While waiting for LSD, the first responders arrived.

87.     While the firemen attempted to open the driver's side door to remove Plaintiff with no success since he could not move, they broke the passenger side door in order to get inside the cabin of the truck.

88.     Upon entering the truck, the crew released the seatbelt that Plaintiff was strapped in and placed Plaintiff on the gurney and transported him to the local hospital. As Plaintiff was rested in the back of the ambulance, he was shouting and screaming due to excruciating pain he was in. Plaintiff then passed out and when he was revived, he found himself in a room surrounded by medical staffs.

89.     Plaintiff was then provided pain medications and was transport to the exam room for an MRI examination. While in Intensive Care Unit, ("ICU"), Plaintiff remained in the hospital for several days for additional treatments and examinations.

90.     As a preliminary result, it was determined that the incident had damaged his spinal cord and was transferred from ICU to a private room where he was provided additional pain killer, medical treatments and examinations. Plaintiff's wife, co-plaintiff Mrs. Mazmanian was informed of the incident and had to fly from California to Missouri to be at the bed side with her husband. Approximately, 10 days later, a physician specialized in spinal cord surgery visited Plaintiff and advised him that he needed a surgery to repair the damages, but the possibility of being paralyzed was greater if surgery did not go successfully. Plaintiff and his wife were placed in making a decision that either forego the surgery and suffer the excruciating pain for life or risk of becoming paralyzed if surgery fails and they could not be guaranteed that if surgery was successful, Plaintiff would return to his normal life without agonizing pain and suffering. The news was devastating to Plaintiff and his wife and upon discharge from Mercy Hospital in Joplin Missouri they returned to California to start their new lives with a permanently disabled husband and his wife who continues to suffer along the side of her husband.

91.     This was not the end of Plaintiff and his family's misery. While permanently injured, Defendants instead of offering Plaintiff and his wife helping hands to pick them up as a

1   shattered family in pieces and to put them together by offering them financial assistance and/or

2   worker's compensation benefits, they terminated Mr. Tanius employment claiming he was an

3   Independent Contractor not entitled to any benefits. By so doing, Defendants simply told Plaintiff,

4   you made us tons of money during five and half year's employment, but we don't give a damn

5   about you and your family; we have no use for you anymore! A sad truth that only cruel,

6   coldhearted and crooked individuals like defendants Gatton and O'Malley would do to

7   hardworking individuals similar to Plaintiff and the Drivers.

8          **X.    GENERAL ALLEGATIONS IN SUPPORT OF PERSONAL INJURY CLAIM**

9          92.    Defendants and each of them including Gatton and O'Malley as Plaintiff's

10   employers owed Plaintiff a duty of care to act as responsible employers by providing Plaintiff

11   financial relieve either through Worker's Compensation benefits or by providing him an early

12   retirement package for injuries Plaintiff suffered while in control of defendants, driving the truck

13   and the trailer that defendants provided.

14          93.    Defendants and each of them including Gatton and O'Malley as Plaintiff's

15   employers breached the duties they owed to Plaintiff when they falsely misclassified him as an

16   Independent Contractor in order to avoid paying him benefits under the Worker's Compensation

17   Act.

18          94.    They further breached the duties as plaintiff's employers when they failed to advise

19   him that as an independent Contractor Plaintiff would not be entitled to any benefits in the event

20   he was injured while working for Defendants.

21          95.    Defendants also breached the duties they owed Plaintiff when their conducts fell

22   below the required standard of care when they did not take reasonable precautions to ensure that

23   their drivers will be provided with statutory benefits in the event of an injury.

24          96.    Defendants and each of them including Gatton and O'Malley as Plaintiff's

25   employers breached the duties they owed to Plaintiff when they coerced Plaintiff to enter into an

26   adhesion contract to take Plaintiff's rights away in refusing to offer him statutory benefits Plaintiff

27   was entitled to as a W-2 Employee working for Defendants.

28

97.     Defendants and each of them including Gatton and O'Malley as Plaintiff's employers who coerced Plaintiff to sign a frivolous Independent Contractor agreement was the factual and proximate cause of the financial harm and damages suffered by Plaintiff and his wife. Particularly, Defendants' failure to take reasonable precautions to ensure Plaintiff would be provided financial assistant and additional failure is to actually provide Plaintiff with financial protection by providing him worker's compensation benefits or offer him early retirement benefits were substantial factors in causing the Plaintiff and his wife's financial harm and damages.

98.     Plaintiff suffered financial harm and damages from the conduct of Defendant since Plaintiff is declared totally disabled and not able to care for himself and his family due to damages to his spinal cord and continues to suffer harm and damages including, but not limited to loss of income, pain & suffering, past, present and future medical expenses, emotional distress and past, present, and future, economic and noneconomic damages.

## XI.  CLASS ACTION ALLEGATIONS

99.     **Class Definitions:** Plaintiff brings his FLSA claims as a *Collective* action pursuant to California Business and Professions Code §§ 17200; 17500; California Labor Code § 132a; §§ 201-203; § 226.8; § 2699(a), § 3200; as to claims for labor violations, liquidated damages, and attorneys' fees and costs under California Labor Law and the FLSA. The FLSA *Collective* that Plaintiff seeks to represent is defined as follows:

> All current and former California Drivers who were owner operators and employed by Defendants LSI, LRI, Gatton and O'Malley; to provide transportation and delivery services within the United States at any time during the period beginning six years prior to the filing of this Complaint, and continuing through the present.

100.    Plaintiff's claims for violations of Labor Code § 3200 and the FLSA may be brought and maintained as an "opt-in" *Collective* action pursuant to Cal. Labor Law and Section 216(b) of the FLSA, because Plaintiff's Labor and FLSA claims are similar to the claims of the *Collective members*.

101.    The *Collective members* are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that

19

Class Action Complaint

1   misclassifies them as exempt independent contractors, and thus requires them to perform work

2   without compensation in violation of the Cal. Labor Law and FLSA.

3        102.   Plaintiff is representative of the *Collective members* and is acting on behalf of their

4   interests, as well as Plaintiff's own interests, in bringing this action.

5        103.   Plaintiff will fairly and adequately represent and protect the interests of *Collective*

6   *members*. Plaintiff has retained counsel competent and experienced in employment class action

7   and collective action litigation.

8        104.   The similarly situated *Collective members* are known to Defendants, are readily

9   identifiable, and may be located through Defendants' records. These similarly situated employees

10  may readily be notified of this action, and allowed to "opt-in" to this case pursuant to Cal. Labor

11  Law and FLSA, 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for

12  unpaid wages, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under

13  the FLSA and economic and noneconomic damages due to violation of Labor Code § 3200.

14            **XII. CLASS ACTION ALLEGATIONS UNDER CAL. R. CIV. P. 382**

15       105.   First, Plaintiff seeks to maintain his California state law claims as a class action

16  pursuant to California Civil Code §1781 and California Code of Civil Procedure §382. In

17  particular, Plaintiff seeks to certify the following §382, Sub-Classes (the "First Sub-Class"):

18  
19  
20  
21  
22
>   All current and former Drivers who were employed by Defendants LSI,
>   LRI, Gatton and O'Malley to provide delivery and transportation services
>   in the State of California at any time during the period beginning six years
>   prior to the filing of this action and continuing through the present who were
>   misclassified as Independent Contractors who were not paid their statutory
>   benefits under FLSA claims and California Labor Code §§ 201-203; §
>   226.8; § 2699(a) and (f).

23       106.   Second, Plaintiff seeks to maintain his California state law claims as a class action

24  pursuant to §382 of the Cal. Rules of Civil Procedure. In particular, Plaintiff seeks to certify the

25  following §382, Sub-Classes (the "Second Sub-Class"):

26  
27  
28
>   All current and former California owner operator Drivers who worked for
>   Defendants LSI, LRI, Gatton and O'Malley, and who were classified as
>   Independent Contractors and who were injured while working and doing

delivery for Defendants LSI, LRI, Gatton and O'Malley and who were denied benefits under California Worker's Compensations ACT, Labor Code § 3200 due to misclassification; who were denied vacation and 3-days mandatory sick pay during the six years immediately preceding the filing of this action through the present.

107.    The two Sub-Classes set forth above are referred to collectively as the "Class". Members of each Sub-Class are referred to as members of the "Class" or "Class members."

108.    Plaintiff seeks to serve as a Class Representative for the above-defined Class.

109.    Plaintiff's California state law claims have been brought and may properly be maintained as a class action under California Civil Code §1781 and California Code of Civil Procedure §382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

110.    **Numerosity:** The potential members of the Class are believed to exceed 100, and the Class Members are so numerous that joinder of all members is impracticable.

111.    **Commonality:** There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. Examples of these common questions of law and fact include, without limitation:

a.    Whether Defendants LSI, LRI, Gatton and O'Malley through their policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from California minimum wage protections, fail to pay members of the First Sub-Class the minimum wage they are owed in violation of California Labor Code § 1194;

b.    Whether Defendants LSI, LRI, Gatton and O'Malley fail to maintain proper records for members of the First Sub-Class, including but not limited to all hours worked, in violation of the California Labor Code and Wage Orders;

c.    Whether Defendants LSI, LRI, Gatton and O'Malley fail to compensate members of the First Sub-Class for all hours worked, in violation of the California Labor Code and Wage Orders;

d. Whether Defendants LSI, LRI, Gatton and O'Malley fail to authorize and permit, make available, and/or provide members of the First Sub-Class with the timely meal and rest periods to which they are entitled in violation of the California Labor Code and Wage Orders;

e. Whether Defendants LSI, LRI, Gatton and O'Malley fail to reimburse members of the First Sub-Class for reasonable and necessary business expenses in violation of California Labor Code § 2802;

f. Whether Defendants LSI, LRI, Gatton and O'Malley fail to timely pay members of the First Sub-Class for all wages owing upon termination of employment in violation of California Labor Code;

g. Whether Defendants LSI, LRI, Gatton and O'Malley fail to provide members of the First Sub-Class with timely, accurate itemized wage statements in violation of California Labor Code and Wage Orders;

h. Whether Defendants LSI, LRI, Gatton and O'Malley violated the California Business & Professional Code §17200 by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles DEFENDANTS provided to Drivers;

i. Whether Defendants LSI, LRI, Gatton and O'Malley violated the California Deceptive Practices, California Business & Professional Code §17200 by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles Defendants provided to Drivers;

Class Action Complaint

j.   Whether Defendants LSI, LRI, Gatton and O'Malley engaged in constructive fraud and negligent misrepresentation and had and breached a duty of disclosure by misrepresenting that Drivers would be independent contractors, misrepresenting income Drivers would earn, misrepresenting miles Drivers would get, misrepresenting the average length of haul, and concealing material facts including the high turnover and failure rates of Drivers, the low average income of Drivers, and the low average miles Defendants provided to Drivers;

k.   Whether Defendants LSI, LRI, Gatton and O'Malley fail to timely pay members of the First Sub-Class for all wages owing upon termination of employment in violation of California Business and Professions Code §§ 17200 et seq.;

l.   Whether Defendants LSI, LRI, Gatton and O'Malley fail to reimburse members of the First Sub-Class for reasonable and necessary business expenses in violation of Business and Professions Code §§ 17200 et seq.;

m.   Whether Defendants LSI, LRI, Gatton and O'Malley fail to provide members of the First Sub-Class with timely, accurate itemized wage statements in violation of Business and Professions Code §§ 17200 *et seq.*;

n.   Whether Defendants LSI, LRI, Gatton and O'Malley fail to maintain proper records for members of the First Sub-Class, including but not limited to all hours worked, in violation of California Business and Professions Code §§ 17200 et seq.;

o.   Whether Defendants LSI, LRI, Gatton and O'Malley are liable for penalties to members of the First Sub-Class under the PAGA;

p.   Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors who are exempt from receiving any benefits under California Worker's Compensations Act, Labor Code § 3200;

q.   Whether Defendants LSI and LRI fail to compensate members of the Second Sub-Class for all benefits they were entitled for injuries they suffered while working for Defendants in violation of the California Labor Code § 3200;

Class Action Complaint

r.  Whether Defendants LSI and LRI fail to authorize and permit, make available, and/or provide members of the Second Sub-Class any economic and noneconomic benefits for injured Drivers suffered while working for Defendants under California Worker's Compensations Act, Labor Code § 3200;

s.  Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors discriminated against workers who are members of the Second Sub-Class who were/are injured in the course and scope of their employment who did not receive any benefits in violation of the California Labor Code § 3200;

t.  Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors discriminated against members of the Second Sub-Class who could not submits a workers' compensation claim to the employer due to misclassification;

u.  Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors discriminated against members of the Second Sub-Class who did not file an application to have California's Division of Workers' Compensation decide their claims;

v.  Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors discriminated against members of the Second Sub-Class who did not announce an intent to file a claim or application for workers' compensation benefits;

w.  Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors discriminated against members of the Second Sub-Class who did not obtains a disability rating from a physician due to misclassification;

x.  Whether Defendants LSI and LRI through their policy and practice of unlawfully misclassifying Drivers as independent contractors discriminated against members of

Class Action Complaint

1     the Second Sub-Class who did not settle a workers' compensation claim with the

2     employer;

3     y.  Whether Defendants LSI and LRI through their policy and practice of unlawfully

4        misclassifying Drivers as independent contractors discriminated against members of

5        the Second Sub-Class who did not win an award of workers' compensation;

6     z.  Whether Defendants LSI and LRI through their policy and practice of unlawfully

7        misclassifying Drivers as independent contractors discriminated against members of

8        the Second Sub-Class who were penalized and/or unlawfully terminated for having a

9        work-related injury or for making a workers' compensation claim in connection with

10      that injury; and

11     aa. The proper formula for calculating restitution, damages and penalties owed to

12        Plaintiff, the Class and Sub-Class as alleged herein.

13     112.   **Typicality:** Plaintiff's claims are typical of the claims of the Class. Defendants

14 LSI, LRI, Gatton and O'Malley's common course of unlawful conduct as alleged herein has

15 caused Plaintiff and Class members to sustain the same or similar injuries and damages. Plaintiff's

16 allegations – both legal and factual – are thereby representative of and co-extensive with the

17 claims of the Class.

18     113.   **Adequacy:** Plaintiff does not have any conflicts of interest with members of the

19 Class he seeks to represent, and Plaintiff will prosecute this case vigorously on behalf of the

20 proposed Class members. Plaintiff's Counsels are competent and experienced in litigating wage

21 and hour and complex commercial class actions. Plaintiff will fairly and adequately represent and

22 protect the interests of the Class he seeks to represent.

23     114.   **Superiority of Class Action:** A class action is superior to other available means

24 for the fair and efficient adjudication of this controversy. Individual joinder of all Class members

25 is not practicable, and questions of law and fact common to the Class predominate over any

26 questions affecting only individual Class members. Each Class member has been damaged and is

27 entitled to recovery by reason of Defendants LSI, LRI, Gatton and O'Malley's illegal policy and

28 practice of misclassifying their Drivers as independent contractors, exempt from prevailing state

1    wage and hour laws, and their other violations of law stated in this complaint. Class treatment will

2    allow those similarly situated persons to litigate their claims in the manner most efficient and

3    economical for the Parties and the judicial system.

4        115.    Plaintiff knows of no difficulty that would be encountered in the management of

5    this litigation that would preclude its maintenance as a class action.

6                            **FIRST CAUSE OF ACTION**
                              Willful Misclassification
7                            California Labor Code § 226.8
8                    (On Behalf of Sub-Classes Against All Defendants)

9        116.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

10    forth herein.

11        117.    Defendants LSI, LRI, Gatton and O'Malley intentionally and willfully

12    characterized Plaintiff and members of the class as independent contractors rather than employees

13    in violation of California Labor Code § 226.8 as described in paragraphs 1 to 21 and 31 to 115.

14        118.    Defendants LSI, LRI, Gatton and O'Malley have been engaging in a pattern and

15    practice of misclassifying employees as independent contractors for their own financial benefits.

16        119.    As a direct and proximate result of the unlawful acts and/or omissions of

17    Defendants, Plaintiff and the putative Class alleged herein are entitled to damages in an amount to

18    be determined at trial, civil penalties of not less than ten thousand dollars ($10,000.00) and not

19    more than twenty-five thousand dollars ($25,000.00) for each violation, any other penalties and

20    fines provided by law, interest thereon, attorneys' fees, and costs of suit.

21        120.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

22                            **SECOND CAUSE OF ACTION**
                              Waiting Time Penalties
23                           California Labor Code §§ 201-203
24                (On Behalf of the First Sub-Class Against All Defendants)

25        121.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

26    forth herein.

27

28

122.  Defendants LSI, LRI, Gatton and O'Malley do not provide Plaintiff and putative Class members with their wages when due under California law after their employment with Defendants ends.

123.  Labor Code § 201 provides:

> If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

124.  Labor Code § 202 provides:

> If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

125.  Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

126.  Plaintiff and some of the putative Class members were either wrongfully terminated or voluntarily left their employment with Defendants LSI, LRI, Gatton and O'Malley during the statutory period, at which time Defendants owed them unpaid wages. These earned, but unpaid, wages derive from time spent working for the benefit of Defendants, which went unrecorded and/or uncompensated.

127.  Defendants LSI, LRI, Gatton and O'Malley willfully refused and continues to refuse to pay Plaintiff and putative Class members all the wages that were due and owing to them after termination, including premium pay for missed meal and rest breaks, vacation times and sick pays. As a result of Defendants' actions, Plaintiff and putative Class members have suffered and continue to suffer substantial losses, including lost earnings, and interest.

Class Action Complaint

128.    Defendants LSI, LRI, Gatton and O'Malley's willful failure to pay Plaintiff and putative Class members the wages due and owing them constitutes a violation of Labor Code §§ 201-202. As a result, Defendants are liable to Plaintiff and proposed Class members for all penalties owing pursuant to Labor Code §§ 201-203.

129.    In addition, § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, the Plaintiff and putative Class members are entitled to penalties pursuant to Labor Code § 203, plus interest.

130.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

### THIRDT CAUSE OF ACTION
Statutory Penalties Pursuant to PAGA
California Labor Code § 2699(a)
(On Behalf of All Aggrieved Employees Against All Defendants)

131.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

132. Labor Code § 2699(a) provides:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees.

133. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days.

134. Labor Code § 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of

the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least six years at the place of employment or at a central location within the State of California.

135. Labor Code § 558(a) provides:

Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

136. Labor Code § 1174.5 provides:

Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant

to subdivision (b) of Section 1174, shall be subject to a civil penalty of five hundred dollars ($500).

137.    Plaintiff seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants LSI, LRI, Gatton and O'Malley, as alleged above, to timely pay all wages owed to Plaintiff and each putative Class member in compliance with Labor Code §§ 201-202 in the amounts established by Labor Code § 203. Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 203, as prayed for herein.

138.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants LSI, LRI, Gatton and O'Malley, alleged above, to provide Plaintiff and each Class member an accurate, itemized wage statement in compliance with Labor Code § 226(a) in the amounts established by Labor Code § 226(e). Plaintiff seeks such penalties as an alternative to the penalties available under Labor Code § 226(e), as prayed for herein.

139.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants LSI, LRI, Gatton and O'Malley, alleged above, to provide Plaintiff and each Class member compliant meal and rest periods in compliance with Labor Code § 512.

140.    Plaintiff also seeks civil penalties pursuant to Labor Code § 2699(a) for each failure by Defendants LSI, LRI, Gatton and O'Malley, alleged above, to maintain accurate records in compliance with Labor Code § 1174 with respect to Plaintiff and each Class member.

141.    Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff provided the Labor and Workforce Development Agency ("LWDA") with notice of his intention to file this claim. Sixty-five calendar days have passed without notice from the LWDA. Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

142.    Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved employees, and himself as set forth in Labor Code § 2699(g), (i).

143.    Defendants LSI, LRI, Gatton and O'Malley are liable to Plaintiff, the Class, and the State of California for the civil penalties set forth in this Complaint, with interest thereon. Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

144.    Wherefore, Plaintiff and the Class request relief as hereinafter provided.

Class Action Complaint

## FOURTH CAUSE OF ACTION
Statutory Penalties Pursuant to PAGA
Labor Code § 2699(f)
(On Behalf of All Aggrieved Employees Against All Defendants)

145.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

146. Labor Code § 2699(f) provides:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

147.   To the extent than any violation alleged herein does not carry penalties under Labor Code § 2699(a), Plaintiff seeks civil penalties pursuant to Labor Code § 2699(f) for Plaintiff and Class members each pay period in which he or she was aggrieved, in the amounts established by Labor Code § 2699(f).

148.   Pursuant to Labor Code § 2699.3(a)(1) and (2), Plaintiff has provided the LWDA with notice of his intention to file this claim.  Sixty-five calendar days have passed without notice from the LWDA.  Plaintiff satisfied the administrative prerequisites to commence this civil action in compliance with § 2699.3(a).

149.   Plaintiff seeks the aforementioned penalties on behalf of the State, other aggrieved employees, and themselves as set forth in Labor Code § 2699(g), (i).

150.   DEFENDANTS is liable to Plaintiff, the proposed Class, and the State of California for the civil penalties set forth in this Complaint, with interest thereon. Plaintiff is also entitled to an award of attorneys' fees and costs as set forth below.

151.   Wherefore, Plaintiff and the Class request relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
Violations of California's Workers Compensation Act
California Labor Code §§ 3200 and Section 4 of Article XIV of the California Constitution
(On Behalf of the Second Sub-Class Against All Defendants)

152.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

153.   Plaintiff was employed by Defendants LSI, LRI, Gatton and O'Malley for more than five and half years. During his tenure, Plaintiff was one of Defendants' top drivers for producing the amount of the work and loads Defendants expected Plaintiff to deliver. On each incident, Plaintiff was successful until the day of his injuries which happened during Plaintiff's course of employee while driving at Defendants' directions and control.

154.   In order to avoid paying workers like Plaintiff and all similarly situated, Defendants for their own benefits misclassify Drivers as independent contractors in violation of Labor Code § 226.8 to avoid paying benefits when such benefits are lawfully due and owed Plaintiff and Class members.

155.   To avoid such abuse and to limit employers' liabilities, the State of California like other States have adopted a set of laws called the Workers' Compensation Act, ("WCA").

156.   Labor Code, § 3200, et seq.; *Charles J. Vacanti, M.D., Inc. v. State Comp. Insurance Fund* (2001) 24 Cal.4th 800, 810 ["Article XIV, section 4 of the California Constitution gives the Legislature 'plenary power . . . to create, and enforce a complete system of workers' compensation.' Pursuant to this authority, the Legislature enacted the WCA—a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment."].

157.   It provides a comprehensive program for paying employees that have been injured in the workplace. *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 ["The Act intends comprehensive coverage of injuries in employment."].

158.   In many cases, the Workers' Compensation Act is the "sole and exclusive remedy" for claims against an employer when an employee has been injured. Lab. Code, § 3602

159.   This means that employees in difficult financial situations might have no choice but to file a workers' compensation claim against their employer. Under most circumstances, injured workers can seek compensation without regard to whether their employer was at fault for their injury. Labor Code, § 3600, subd. (a) ["Liability for the compensation provided by this

Class Action Complaint

1   division . . . shall, without regard to negligence, exist against an employer for any injury sustained

2   by his or her employees arising out of and in the course of the employment and for the death of

3   any employee if the injury proximately causes death . . . ."].

4        160.    The WCA affords employers an incentive to maintain a safe workplace, and assures

5   the efficient compensation of employees for those injuries. *Fermino v. Fedco, Inc.* (1994) 7

6   Cal.4th 701, 708 ["'The employee is afforded relatively swift and certain payment of benefits to

7   cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives

8   up the wider range of damages potentially available in tort.'"], quoting *Shoemaker v. Myers* (1990)

9   52 Cal.3d 1, 16.

10       161.    Due to unlawful misclassification of workers' as independent contractors,

11  Defendants attempt to walkaway from such liabilities when their Drivers are injured at work while

12  under supervision and control of Defendants.

13       162.    An employer has non-delegable duties under the Labor Code related to workplace

14  safety and that these statutory duties are greater than the duty of care imposed under common law

15  principles. (*Levels v. Growers Ammonia Supply Co.* (1975) 48 Cal.App.3d 443, 451-52; Labor

16  Code, § 6400; *Conner v. Utah Constr. and Mining Co.* (1964) 231 Cal.App.2d 263, 271-72.) An

17  employer's duty to maintain a safe workplace encompasses many responsibilities, including the

18  duty to inspect the workplace to discover and correct dangerous conditions and to adequately train

19  and warn of their existence. (*Bonner v. Workers' Comp. Appeals Bd.* (1990) 225 Cal.App.3d

20  1023.) An employer is also required to provide all necessary safety devices and safeguards for

21  their employees. (Lab. Code, §§ 6401, 6402, 6403.)

22       163.    Since, unscrupulous employers similar to Defendants LSI and LRI and their

23  corporate crooks Gatton and O'Malley illegally misclassify their Drivers, they did not care if those

24  dedicated and loyal Drivers like Plaintiff who made Defendants a fortune, drop dead!

25       164.    On or October 8, 2018, Plaintiff was injured while at work and under the control

26  and supervision of his employers, Defendant LSI, LRI, Gatton and O'Malley. Instead of giving

27  him a helping hand, Defendants terminated Plaintiff's employment for reporting an injury while

28  employed by them On October 29, 2018.

165.    Due to his injuries, Plaintiff was under the care of his physicians for more than 9-months and going from one hospital to another, one physician to another, one chiropractic to another to repair and to restore the physical condition he was in prior to the accident; yet, he has permanent injuries that require doctor visits, surgeries and future medical care and expenses.

166.    In addition, due to his injuries and after Defendants so cowardly terminated Plaintiff's employment, he has been out of work. Plaintiff is also entitled to loss income, an amount according to proof at trail.

167.    Further, due to such injuries, Plaintiff is also entitled to future economic and noneconomic damages according to proof at trial.

168.    Plaintiff bring this action on his own behalf and those similarly situated as described under the Second Sub-Class Action within six years prior to filing the complaint to the current time for his own injuries and those other Drivers who also sustained injuries while working for Defendants LSI, LRI, Gatton and O'Malley and under the control and supervision of Defendants; nonetheless, they were not afforded worker's compensation due to unlawful misclassification of the Drivers.

169.    Moreover, Plaintiff bring this action on his own behalf and those similarly situated as described under the Second Sub-Class Action within six years prior to filing the complaint to the current time for unlawful and retaliatory termination due to work related injuries Plaintiff and other Drivers who were in the same and similar situations.

170.    Under California law, it is the state's policy "that there should not be discrimination against workers who are injured in the course and scope of their employment." Labor Code, § 132a.

171.    California courts have interpreted this policy to protect employees from retaliation for reporting a work injury. *Raven v. Oakland Unified Sch. Dist.* (1989) 213 Cal.App.3d 1347, 1364.

172.    The broad nature of that policy favors employees who are fired or treated unfairly as the result of a job-related injury. *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 666–667. As such, these retaliatory conducts are unlawful.

173.    California law prohibits employers from *penalizing* their employees for having a work-related injury or for making a workers' compensation claim in connection with that injury. *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 667. This protection extends further than mere firings.

174.    More specifically, an employer unlawfully discriminates or retaliates against an employee when the employer engages in conduct that is detrimental to the worker as the result of an employment-related injury. *Barns v. Workers' Compensation Appeals Board* (1989) 216 Cal.App.3d 524, 531 ["[A] worker proves a violation of section 132a by showing that as the result of an industrial injury, the employer engaged in conduct detrimental to the worker."].

175.    The employer's actions penalized the employee for being injured. The employer therefore engaged in unlawful discrimination and retaliation. *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 667.

176.    Depending on the nature of the job and the degree of impairment, an employer may have an obligation to accommodate a disability caused by the injury. Gov't Code, §12940, subd. (m).

177.Labor Code 3600 states in parts:

(a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602 , 3706 , and 4558 , shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:

(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

(3) Where the injury is proximately caused by the employment, either with or without negligence.

(4)  Where the injury is not caused by the intoxication, by alcohol or the unlawful use of a controlled substance, of the injured employee.   As used in this paragraph, "controlled substance" shall have the same meaning as prescribed in Section 11007 of the Health and Safety Code.

(5)  Where the injury is not intentionally self-inflicted.

(6)  Where the employee has not willfully and deliberately caused his or her own death.

(7)  Where the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor.

(8)  Where the injury is not caused by the commission of a felony, or a crime which is punishable as specified in subdivision (b) of Section 17 of the Penal Code, by the injured employee, for which he or she has been convicted.

(9)  Where the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment.   The administrative director shall promulgate reasonable rules and regulations requiring employers to post and keep posted in a conspicuous place or places a notice advising employees of the provisions of this subdivision.   Failure of the employer to post the notice shall not constitute an expression of intent to waive the provisions of this subdivision.

(10)  Except for psychiatric injuries governed by subdivision (e) of Section 3208.3 , where the claim for compensation is filed after notice of termination or layoff, including voluntary layoff, and the claim is for an injury occurring prior to the time of notice of termination or layoff, no compensation shall be paid unless the employee demonstrates by a preponderance of the evidence that one or more of the following conditions apply:

(A)  The employer has notice of the injury, as provided under Chapter 2 (commencing with Section 5400), prior to the notice of termination or layoff.

(B)  The employee's medical records, existing prior to the notice of termination or layoff, contain evidence of the injury.

(C)  The date of injury, as specified in Section 5411, is subsequent to the date of the notice of termination or layoff, but prior to the effective date of the termination or layoff.

(D)  The date of injury, as specified in Section 5412, is subsequent to the date of the notice of termination or layoff.

Class Action Complaint

178.    There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

179.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

## SIXTH CAUSE OF ACTION
Retaliatory Termination, California Labor Code § 132a
(On Behalf of ALL Plaintiffs Against All Defendants)

180.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

181.    On October 18, 2018, around 10 am, while hauling a load for Defendants, Plaintiff's truck jackknifed on interstate I-44 going west on mile marker 1 in Joplin Missouri. At the time of the incident, Plaintiff was assigned by Defendants to Haul a load using Landstar trailer that was routed to California for delivery.

182.    As described hereinabove, paragraphs 78 to 91 and 153 to 179, plaintiff was injured and later declared totally disabled due to such injuries while working for Defendants.

183.    After learning that Plaintiff had been injured and totally disabled, on or October 29, 2018, Defendants cowardly, callously and coldheartedly terminated Plaintiff's employment with Defendants. Such termination due to injuries suffered by Plaintiff while hauling merchandise for Defendants, was a violation of public policy, California labor Code § 132a.

184.    California labor Code § 132a states:

It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.

185.    Additionally, Section § 132a makes it illegal for employer to terminate employee due to work related injuries:

(1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the

employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

186.    Under Section 132a(1), it is the state's policy "that there should not be discrimination against workers who are injured in the course and scope of their employment." California courts have interpreted this policy to protect employees from retaliation for filing a workers' compensation claim. The broad nature of that policy favors employees who are fired or treated unfairly as the result of a job-related injury.

187.    It is also unlawful to retaliate against an employee for missing work due to a work-related injury. As the California Supreme Court explained:

> [A]n employer may not discharge an employee because of the employee's absence from his job as the consequence of an injury sustained in the course and scope of employment.

*Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 669

188.    Additionally, upon suffering injuries that resulted in a disability, Defendants were prohibited in discrimination based on Plaintiff's disability.

189.    Defendants LSI, LRI, Gatton and O'Malley violated Plaintiff's rights by terminating him in retaliation due to his injuries while driving and hauling merchandise for Defendants.

190.    Further, Defendants LSI, LRI, Gatton and O'Malley unlawfully discriminate or retaliated against Plaintiff when Defendants engaged in conduct that is detrimental to Plaintiff as the result of his employment-related injury.

191.    As the result of such retaliatory and unlawful termination, Plaintiff is entitled to reimbursement for lost wages and work benefits caused by retaliatory acts of Defendants LSI, LRI, Gatton and O'Malley.

192.    In accordance with Labor Code, § 3600, subd. (a) ["Liability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death . . . ."]. *In Fermino v. Fedco,*

Class Action Complaint

1    *Inc.* (1994) 7 Cal.4th 701, 708 ["'The employee is afforded relatively swift and certain payment of

2    benefits to cure or relieve the effects of industrial injury without having to prove fault but, in

3    exchange, gives up the wider range of damages potentially available in tort.'"], quoting *Shoemaker*

4    *v. Myers* (1990) 52 Cal.3d 1, 16.

5        193.    Due to the discriminatory and retaliatory termination, Plaintiff is entitled to civil

6    penalties in the amount of $10,000 including economic and noneconomic damages to be proven at

7    trial. *Dyer v. Workers' Comp. Appeals Board* (1994) 22 Cal.App.4th 1376, 1385 ["The civil

8    penalty is a 50 percent increase in the employee's compensation award, up to $10,000. That

9    penalty applies without regard to proof of actual loss or damage or of any other showing beyond

10   that of discrimination itself."].

11                         **SEVENTH CAUSE OF ACTION**
                       Constructive Fraud and Negligent Misrepresentation
12                     (On Behalf of ALL Plaintiffs Against All Defendants)

13       194.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

14   forth herein.

15       195.    In California, the concealment of material facts which one is bound under the

16   circumstances to disclose, constitutes constructive fraud. A duty to speak may arise from partial

17   disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying

18   a false impression by the disclosure of some facts and the concealment of others is guilty of fraud,

19   even though his statement is true as far as it goes, since such concealment is in effect a false

20   representation that what is disclosed is the whole truth.

21       196.    As noted, Defendants LSI, LRI, Gatton and O'Malley offered Plaintiff and the

22   Class the Driving Opportunity from which they would be able to develop a career and earn

23   positive income. Once Defendants embarked on making such a business offer to the Plaintiff and

24   putative Class, Defendants and each of them owed them a duty of full disclosure. Plaintiff and the

25   putative class relied on such offer, representations, and omissions in misclassifying them as

26   independent contractors who have limited rights and benefits instead of employees who are

27   entitled to greater statutory benefits and company incentives and opportunities. However,

28

1   Defendants did not disclose the material facts of being independent contractors rather than

2   employees. Plaintiff and the putative class relied on such omissions in accepting to be owner

3   operator independent contractors with no statutory rights and benefits. Had Defendants provided

4   the full truth, Plaintiff and the putative class would not have accepted such opportunity or would

5   have attempted to secure benefits from other vendors.

6       197.    Defendants LSI, LRI, Gatton and O'Malley also made representations about miles,

7   earnings, and average lengths of haul Drivers could expect and failed to disclose statutory benefits

8   Drivers would forego as independent drivers similar to overtime wages, minimum wages, meal

9   and break times, vacation, sick pays, unemployment, workers compensation benefits and other

10  statutory entitlements. Plaintiff and the putative class relied on such representations and

11  misrepresentations in accepting the position as owner operator Drivers. However, Defendants did

12  not disclose the material facts that most if not all Drivers did not achieve such mileage, earnings,

13  and average lengths of haul over any sustained period of time and were not entitled to statutory

14  benefits such as unemployment, overtime wages, minimum wages, meal and break times,

15  vacation, sick pays, unemployment, workers compensation benefits, workers' compensations and

16  others as discussed above. Had Defendants provided the full truth, Plaintiff and the putative class

17  would not have accepted Driving opportunity from Defendants.

18      198.    In California, the concealment of material facts which one is duty bound under the

19  circumstances to disclose, constitutes negligent misrepresentation. Under the circumstances here,

20  where, in the course of its business, Defendants offered Plaintiff and the Class the Driving

21  opportunity from which they would be able to develop a career and earn positive income,

22  Defendants were duty bound to disclose all material facts related to the Driving Opportunity and

23  exercise reasonable care and competence. Defendants breached their duty of disclosure and

24  reasonable care and competence by failing to disclose the material facts of statutory benefits

25  Drivers would forego as independent drivers driving 7-days a week for 10 to 14 hours a day,

26  similar to overtime wages, minimum wages, meal and break times, vacation, sick pays,

27  unemployment, workers compensation benefits and other statutory entitlements that Plaintiff and

28  the putative class were not entitled as independent contractors. Had Defendants LSI, LRI, Gatton

1 and O'Malley provided the full truth, Plaintiff and the putative class would not have accepted the

2 employment as Independent Contractors.

3      199.   Plaintiff and the putative Class suffered damages as a result of Defendants LSI,

4 LRI, Gatton and O'Malley's material misstatements and omissions.

5      200.   In the conduct described above, Defendants acted intentionally with malice and/or

6 with reckless disregard toward the rights of Plaintiff and the putative Class entitling Plaintiff and

7 the putative Class to an award of punitive damages under applicable law.

8      201.   Plaintiff also seeks recovery of all out of pocket money and all other valuable

9 consideration paid while driving for Defendants, including actual damages, exemplary damages,

10 interest, injunctive relief, and reasonable attorneys' fees and costs on behalf of himself and the

11 putative Class..

## EIGHTH CAUSE OF ACTION
### Unjust Enrichment
(On Behalf of ALL Plaintiffs Against All Defendants)

14      202.   Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set

15 forth herein.

16      203.   Because of Defendants LSI, LRI, Gatton and O'Malley's wrongful and fraudulent

17 conduct and their failure to disclose material facts as described above, Plaintiff and the Drivers

18 have conferred benefits upon Defendants LSI, LRI, Gatton and O'Malley.

19      204.   Defendants LSI, LRI, Gatton and O'Malley were at all relevant times aware that

20 the benefits conferred upon them by the Drivers were the result of Defendants' wrongful conduct.

21      205.   Allowing Defendants LSI, LRI, Gatton and O'Malley to retain these unjust profits

22 and other benefits would offend traditional notions of justice and fair play. Under these

23 circumstances, it would be inequitable and unjust for Defendants LSI, LRI, Gatton and O'Malley

24 to retain the benefits and allowing it to do so would induce companies to engage in fraudulent

25 and/or other wrongful conduct to increase profits.

26      206.   Defendants LSI, LRI, Gatton and O'Malley are in possession of funds and benefits

27 that were wrongfully obtained from Drivers and such funds should be restored and/or disgorged as

28 ill-gotten gains.

Class Action Complaint

### NINTH CAUSE OF ACTION
Negligent
(On Behalf of ALL Plaintiffs Against All Defendants)

207.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

208.    Plaintiff are informed and believe and, based thereon, allege that the Defendants LSI, LRI, Gatton and O'Malley and each of them, owed the Plaintiffs the duties of care, as set forth above, paragraphs 1-77 and more specifically paragraphs 78 to 98 and 99 to 111.

209.    Plaintiffs are informed and believe and, based thereon, allege that the Defendants LSI, LRI, Gatton and O'Malley and each of them, breach their duties of care that were owed to the Plaintiffs, as set forth above, paragraphs 1-77 and more specifically paragraphs 78 to 98 and 99 to 111.

210.    Plaintiffs are informed and believe and, based there on allege that as a result of each Defendants LSI, LRI, Gatton and O'Malley breach of their respective duties of care, Plaintiffs have suffered, without limitation, physical, emotional, and financial harm, as set forth above, paragraphs 1-77 and more specifically paragraphs 78 to 98 and 99 to 111.

211.    As a result of the conduct and negligence of defendants LSI, LRI, Gatton and O'Malley and each of them, deliberately, negligently and intentionally misclassifying Plaintiff Tanius and the Drivers as Independent Contractors, sustained injuries and were not able to use benefits under Worker's Compensation that were dully entitled to in the event of work related accident; as a result of such misclassification, Plaintiff Tanius and Drivers suffered personal injuries as well as severe emotional distress, pain and suffering, and trauma.

212.    As a result of said conduct and negligence of defendants LSI, LRI, Gatton and O'Malley, plaintiff Tanius and the Drivers have been required to employ and have employed physicians and surgeons and have incurred medical expenses in the treatment of said injuries; plaintiff Tanius alleges on information and belief that he will employ physicians and surgeons in the future and will incur medical expenses in the treatment of said injuries in the future by reason of said negligence. Plaintiff Tanius will ask leave to amend this Complaint to show the exact amounts incurred or will offer proof thereof at the time of trial.

213.    As a result of said conduct and negligence of defendants LSI, LRI, Gatton and O'Malley, and each of them, plaintiff Tanius has been disabled from working at his usual occupation and has lost wages and earnings thereby plaintiff alleges on information and belief that he will lose further wages and earnings in the future by reason of said negligence. Plaintiff Tanius does not know the total amount of wages or earnings lost or to be lost and will ask leave to amend this Complaint to show the same when ascertained or will offer proof thereof at the time of trial.

214.    Plaintiffs are informed and believe and, based thereon, allege that each Defendants LSI, LRI, Gatton and O'Malley, breach of their respective duties of care was a substantial factor, as set forth above in causing the Plaintiffs' harm. As a result of such negligent misclassification, Plaintiff Tanius and Drivers have suffered damages. Plaintiff Tanius will ask leave to amend this Complaint to show the exact amounts incurred or will offer proof thereof at the time of trial.

### TENTH CAUSE OF ACTION
Negligent Per Se
(On Behalf of ALL Plaintiffs Against All Defendants)

215.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

216.    Plaintiffs are informed and believe and based thereon, allege that the Defendants LSI, LRI, Gatton and O'Malley, and each of them, as employers of the Plaintiffs, owed Mr. Tanius and the Drivers the duties of care, as set forth above, paragraphs 1-77 and more specifically paragraphs 78 to 98 and 99 to 111.

217.    Plaintiff Tanius and the Drivers are informed and believe and based thereon, allege that Defendants LSI, LRI, Gatton and O'Malley,  were subject to laws and safety regulations pertaining to employments regulations and maintenance to protect their employees at the time of injuries by offering them BENEFITS UNDER WORKERS' Compensations or other alternatives that would protect and secure injured Plaintiff and Drivers with full financial, and medical benefits.

218.    Plaintiff Tanius and the Drivers are informed and believe and based thereon, allege that Defendants LSI, LRI, Gatton and O'Malley, were also required to comply with laws and regulations that were intended to preserve life and protect bodily injury to persons traveling on the

1    public U.S. roadways by ensuring the proper and timely upkeep and maintenance of vehicles

2    travelling on those public U.S. roadways.

3         219.    Plaintiff Tanius and the Drivers are informed and believe and based thereon, allege

4    that they are members of a class (persons traveling on public U.S. roadways) for whose benefit

5    those laws and safety regulations were passed.

6         220.    Plaintiff Tanius and the Drivers are informed and believe and based thereon, allege

7    that Defendants LSI, LRI, Gatton and O'Malley violated one or more laws and regulations and

8    breached their duties of care that were owed to the Plaintiff Tanius and the Drivers, as set forth

9    above, paragraphs 1-77 and more specifically paragraphs 78 to 98 and 99 to 111.

10        221.    Plaintiff Tanius and the Drivers are informed and believe and based thereon, allege

11   that Plaintiff and Drivers are informed and believe and, based thereon, allege that the they suffered

12   the same type of harm that the laws and regulations were intended to prevent resulting in, without

13   limitation, physical, emotional, and financial harm, as set forth above, from the conduct of

14   Defendants LSI, LRI, Gatton and O'Malley, which was a substantial factor in causing that harm.

15        222.    Plaintiffs are informed and believe and, based thereon, allege that each Defendants

16   LSI, LRI, Gatton and O'Malley, breach of their respective duties of care was a substantial factor,

17   as set forth above in causing the Plaintiffs' harm. As a result of such negligent per se

18   misclassification, Plaintiff Tanius and Drivers have suffered damages. Plaintiff Tanius will ask

19   leave to amend this Complaint to show the exact amounts incurred or will offer proof thereof at

20   the time of trial.

21                          **ELEVENTH CAUSE OF ACTION**
22                               Loss of Consortium
                       (On Behalf of ALL Plaintiffs Against All Defendants)
23
          223.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set
24
     forth herein.
25
          224.    Plaintiffs Hany Tanious and Loussine S. Mazmanian were lawfully married at all
26
     times relevant to this action, and now are husband and wife.
27

28

---

44

Class Action Complaint

225.    As alleged above, and as a result of the conduct of the Defendants, Plaintiffs Hany Tanious sustained severe and permanent injuries and damages.

226.    As a direct and proximate result of the afore-mentioned injuries suffered by Plaintiff Loussine S. Mazmanian spouse, Hany Tanious, Plaintiff Loussine S. Mazmanian has been deprived, continues to be deprived, and expects to be deprived in the future, of her spouse's companionship, affection, love, sexual relations, conjugal fellowship, physical assistance in maintaining the family home and comfort for a non-determinable length of time, which deprivation has caused, continues to cause, and in the future is expected to cause Plaintiff to suffer depression, emotional distress, loss of earning capacity, past, present, and future, and other injuries, the full extent of which has not yet been ascertained, but which will be stated according to proof at trial.

227.    As a further direct and proximate result of the aforesaid conduct of defendants LSI, LRI, Gatton and O'Malley, and each of them, Plaintiff Loussine S. Mazmanian has sustained a loss of consortium, love, society, comfort and affection with respect to Plaintiff Hany Tanious and has thereby sustained pecuniary loss in a some within the jurisdictional limits of the Court, which will be stated according to proof at trial.

### TWELFTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
(On Behalf of ALL Plaintiffs Against All Defendants)

228.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

229.    By undertaking the acts and conduct set forth herein in paragraphs 1 to 111, Defendants LSI, LRI, Gatton and O'Malley, as employers for Plaintiff Tanius and the Drivers assumed duties of care to comply with the existing employment laws including providing Plaintiff Tanius and the Drivers with worker's compensation benefits and other employment protections.

230.    Defendants also possess duties to protect Plaintiff and the Drivers in the event of any injuries Plaintiff and the Class suffer while driving trucks for Defendants. They failed those duties as it was due Plaintiff and the Class.

231.    Because Plaintiff Tanius and the Class reasonably expected and relied upon Defendants LSI, LRI, Gatton and O'Malley, to comply with employment laws including Worker's Compensation Act to provide assistance and benefits, PLAINTIFF and the class members made no other arrangements for assistance such as securing private insurance and worker injuries in the event of an accident.

232.    Defendants LSI, LRI, Gatton and O'Malley as employers and owners of the trucking companies had a unique and special relationship with Plaintiff and the class members in that Defendants represented themselves as employers who care about their employees and promised to protect them while driving for Defendants and to protect them in the event they are injured.

233.    Plaintiff and the class member put all of their trust in Defendants because Gatton and O'Malley did not seem to have an ulterior motive and only seemed to have Plaintiff and the Drivers best interests in mind.

234.    Defendants LSI, LRI, Gatton and O'Malley, in breach of the duties described above, negligently, carelessly, deliberately and intentionally misclassify Plaintiff and the Drivers as Independent Contractors and/or failed to disclose known and serious risks of harm to Plaintiff and the Drivers in the event of an accident to person and property.

235.    Defendants LSI, LRI, Gatton and O'Malley, commandeered Plaintiff and the Driver by mandating them to sign an Independent Contractor Agreement in order to take over Plaintiff and Drivers' personal vehicle; to control them while driving for them; directed them where to pick up loads and where to deliver them; did not permit them to retain other works as alleged Independent Contractors; did not permit them to take lunches and breaks as mandated under the labor laws; did not provide them benefits in the event of work related injuries; did not provide them unemployment benefits in the event they are terminated; did not provide them vacation times; and forced them to work more than 8 hours a day and more than 40 hours per week; failed to give them minimum wages and so many other statutory violations, all to the shock, horror and distress of Plaintiff, the class members and Drivers.

236.    As a direct and proximate result of Defendants LSI, LRI, Gatton and O'Malley's negligence, carelessness, deliberate and misclassification and absolute control over Plaintiff and the Drivers, Plaintiff and the Drivers have suffered and continue to suffer, economic, non-economic, emotional and physical distress in an amount and manner according to proof.

### THIRTEENTH CAUSE OF ACTION
Unlawful Business Practices
California Business and Professions Code §§ 17200, et seq.
(On Behalf of Sub-Classes Against All Defendants)

237.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

238.    The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

239.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

240.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

241.    Beginning at an exact date unknown to Plaintiff, but at least since the date six years prior to the filing of this suit, Defendants, LSI, LRI, Gatton and O'Malley have committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

    a.   violations of the FLSA pertaining to the payment of wages;

    b.   violations of Labor Code § 1194 and IWC Wage Order 9-2001 pertaining to payment of wages;

    c.   violations of Labor Code §§ 226.7 and 512 and Wage Order 9-2001 pertaining to meal and rest breaks;

Class Action Complaint

d. violations of Labor Code § 2802 regarding indemnification for necessary

expenditures;

e. violations of Labor Code § 226 regarding accurate, timely itemized wage

statements;

f. violations of Labor Code § 450 regarding coerced purchases;

g. violations of Labor Code § 226.8 regarding willful misclassification;

h. violations of Labor Code §§ 201-203; and

i. violations of Labor Code §§ 132(a) and 3200.

242.    The violations of these laws and regulations, as well as of the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200 et seq.

243.    The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, et seq. Among other things, the acts and practices have taken from Plaintiff and the Class wages rightfully earned by them, while enabling Defendants and each of them individually and severally to gain an unfair competitive advantage over law-abiding employers and competitors.

244.    Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

245.    As a direct and proximate result of the aforementioned acts and practices, Plaintiff and the Class members have suffered loss of money and property, in the form of unpaid wages and benefits which are due and payable to them.

246.    Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition. Plaintiff and the Class members are entitled to restitution pursuant to Business and

48

Class Action Complaint

1  Professions Code § 17203 for all wages and payments unlawfully withheld from employees during

2  the four-year period prior to the filing of this Complaint. Plaintiff's success in this action will

3  enforce important rights affecting the public interest and, in that regard, Plaintiff sues on behalf of

4  himself as well as others similarly situated. Plaintiff and putative Class members seek and are

5  entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing

6  to them.

7       247.    Plaintiff herein takes upon himself enforcement of these laws and lawful claims.

8       248.    There is a financial burden involved in pursuing this action, the action is seeking to

9  vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by

10  forcing him to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate

11  pursuant to Code of Civil Procedure §1021.5 and otherwise.

12      249.    Wherefore, Plaintiff and the putative Class request relief as hereinafter provided.

13                              **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiffs, on behalf of themselves and the above-described Class and

15  Collective Action Members, request relief as follows:

16      a)  Certification of the above-described Class as a class action, pursuant to Cal. R. Civ.

17          Pro. 382;

18      b)  Facilitated Notice under Cal. Labor Laws;

19      c)  Conditional and Final Certification of a Collective Action;

20      d)  Appointment of Plaintiffs as a Class Representatives;

21      e)  Appointment of Plaintiffs' Counsel as Class Counsel;

22      f)  Provision of class notice to all Class Members;

23      g)  A declaratory judgment that Defendants have knowingly and intentionally

24          violated the following provisions of law, among others:

25          1.  Labor Code §§ 226.8, by knowingly and willfully misclassifying Plaintiffs and

26              Class Members as independent contractors;

27

28

2. California Labor Code §§ 510, 1194 *et seq.*, 1197, and IWC Wage Order No.9, by failure to pay minimum wages and overtime compensation to Plaintiffs and Class Members;

3. The FLSA, by failing to pay overtime wages to Plaintiffs and Collective Action Members;

4. California Labor Code § 2802, by failure to reimburse Plaintiffs and Class Members for necessary business expenses;

5. California Labor Code §§ 226.7 and 512, and IWC Wage Order No. 9 for failure to provide off-duty meal periods and paid rest breaks to Plaintiffs and Class Members;

6. California Labor Code §§ 201-203, by willful failure to pay all wages owed at the time of termination of employment;

7. California Labor Code §§ 132(a), wrongful termination and Section 3200, violations of Cal. Worker's Compensation Act;

8. California Labor Code § 226(a) and 1174.5, by failure to provide itemized written statements semimonthly or at the time of payment of wages accurately showing all the information required by California law, including but not limited to total hours worked, and for failure to keep accurate payroll records;

9. California Business and Professions Code §§ 17200 *et seq.*, by failure to pay unpaid minimum wages and overtime compensation due to Plaintiff and Class Members under California law, by willfully failing to pay all compensation owed to Plaintiffs and Class Members upon termination of employment; by willfully failing to provide legally compliant wage statements; by requiring Plaintiffs and Class Members to work through their meal periods without paying them proper compensation; by failing to reimburse Plaintiffs and Class Members for necessary business expenses;

10. by willfully and knowingly misclassifying Plaintiffs and Class Members as independent contractors for Defendants' financial gain; and A declaratory

Class Action Complaint

1    judgment that Defendants have knowingly and intentionally violated Cal. Labor

2    Laws.

3    h.   Damages and restitution according to proof at trial for all unpaid wages and other

4    injuries, as provided by the California Labor Code;

5    i.   For a declaratory judgment that Defendants LSI, LRI, Gatton and O'Malley have

6    violated the California Labor Code and public policy as alleged herein;

7    j.   For a declaratory judgment that Defendants LSI, LRI, Gatton and O'Malley have

8    violated California Business and Professions Code §§ 17200 et seq., as a result of

9    the aforementioned violations of the California Labor Code and of California

10    public policy protecting wages;

11    k.   For preliminary, permanent, and mandatory injunctive relief prohibiting

12    Defendants LSI, LRI, Gatton and O'Malley have, their officers, agents, and all

13    those acting in concert with them from committing in the future those violations of

14    law herein alleged;

15    l.   For an equitable accounting to identify, locate, and restore to all current and former

16    employees the wages they are due, with interest thereon;

17    m.   For an order awarding Plaintiff and the Class and *Collective members*

18    compensatory damages, including lost wages, earnings, liquidated damages, and

19    other employee benefits, restitution, recovery of all money and other valuable

20    consideration paid for, actual damages, punitive damages, and all other sums of

21    money owed to Plaintiff and Class members, together with interest on these

22    amounts, according to proof;

23    n.   For an order awarding Plaintiff and the Class members civil penalties pursuant to

24    the California Labor Code provisions cited herein, with interest thereon;

25    o.   For an award of reasonable attorneys' fees as provided by the California Labor

26    Code; California Code of Civil Procedure § 1021.5; the FLSA; the California

27    Business & Professional Code § 17200; and/or other applicable law;

28

51

1        p.  For all of Plaintiff's past, present and future economic and noneconomic damages

2            due to injuries Plaintiff sustained while working, according to proofs;

3        q.  For all costs of suit;

4        r.  For interest on any damages and/or penalties awarded, as provided by applicable

5            law; and

6        s.  For such other and further relief as this Court deems just and proper.

7

8

9    Respectfully Submitted,          LAW OFFICE OF MOTAZ M. GERGES

10   DATED: October 07, 2020

11

                                        Motaz M. Gerges, Attorneys for Plaintiffs Hany

12                                           Tanious; Loussine S. Mazmanian and the Class
     Members

13

14

15

16

17   **DEMAND FOR JURY TRIAL**

18       Plaintiff on behalf of himself and all Class and *Collective Members*, hereby demand a trial

19   of their claims by jury to the extent authorized by law.

20   Respectfully Submitted,          LAW OFFICE OF MOTAZ M. GERGES

21

22   DATED: October 07, 2020

23                                           Motaz M. Gerges, Attorneys for Plaintiffs Hany

24                                           Tanious; Loussine S. Mazmanian and the Class
     Members

25

26

27

28

Class Action Complaint